UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA,

        v.

JOSE GARCIA,

                     Defendant.
-----------------------------------------------------------------X

**MEMORANDUM AND ORDER**
16-CR-0060 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On March 11, 2016, Jose Garcia ("Defendant") waived indictment and pleaded guilty to a single-count information pursuant to a plea agreement. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to time served, five years of supervised release, $258,000.00 in restitution, and a $100.00 special assessment.

## BACKGROUND

On March 11, 2016, Defendant waived indictment and pleaded guilty to a single-count information pursuant to a plea agreement. *See* Waiver of Indictment, ECF No. 3; Information, ECF No. 2; Plea Agreement, ECF No. 5. The Information charged Defendant with a single count of Passing Treasury Checks Bearing Forged Endorsements, in violation of 18 U.S.C. § 510(a)(2). Information ¶ 1.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I.    Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the

Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born in Puerto Rico on November 4, 1962 to Gary Fortier and Carmen Lebron. Presentence Investigation Report ("PSR") ¶ 34, ECF No. 11. When he was nine days old, Defendant was adopted by Lorenzo Garcia, his mother's husband. *Id.* ¶ 34. Defendant's adoptive father already had approximately twenty children from three previous marriages. *Id.* ¶ 35. The union between Defendant's adoptive father and Defendant's mother resulted in three children. *Id.* ¶ 37. Defendant remains close to one of those siblings, Carmen Yvette Garcia. *Id.*

Due to complications during his birth, Defendant suffered a broken skull and spoke with a lisp. *Id.* ¶ 35. He was largely mute until the age of eleven, and he underwent electroshock therapy until the age of nine. U.S. Probation Office Sentence Recommendation ("Sentence Recommendation") at 2, ECF No. 11-1; PSR ¶ 35. Throughout his childhood, Defendant's

2

mother brought him to several doctors, each of whom stated that Defendant was dying and they could not help him. PSR ¶ 35. Members of Defendant's adoptive father's family often harassed and abused Defendant because of his medical issues. *Id.* According to Defendant, when he was seven years old, one of his adoptive father's ex-wives gave him a piece of candy laced with poison. *Id.*

At the age of eleven, Defendant moved with his mother to New York City. *Id.* ¶ 38. After the move, Defendant's mother took him to a "voodoo party," which allegedly cured his muteness. *Id.* Thereafter, Defendant became depressed because he missed his adoptive father, so his mother invited the father to come live with them, even though she had previously intended to divorce him. *Id.* In 1977, Defendant's mother and adoptive father divorced, and the father returned to Puerto Rico. *Id.* When he was thirteen years old, Defendant overheard a doctor tell his mother that Defendant would not live past the age of thirty. *Id.* Believing he was going to die, Defendant became depressed and began drinking alcohol excessively and performing poorly in school. *Id.* In 1978, when Defendant was fifteen or sixteen years old, his mother sent him back to Puerto Rico to live with his adoptive father. *Id.* In 1980, at the age of eighteen, Defendant married, and, in 1982, he returned to New York City. *Id.* ¶¶ 38-39.

Since 1992, Defendant and his wife have relied on social security benefits and food stamps. *Id.* ¶¶ 57, 59, 61. Defendant and his wife each receive $602.00 per month in social security disability income and $207.00 per month in food stamps. *Id.* ¶ 61. Defendant's wife suffers from schizoaffective disorder, impulse control disorder, and mild mental retardation. *Id.* ¶ 39. According to Defendant, his wife has the mental age of a twelve-year-old. *Id.* Defendant is her primary caretaker, with the assistance of home health aides. *Id.* Defendant and his wife have had five children, but all of them have been removed from the home or adopted by others in

3

infancy, largely because of their mother's mental instability and incapacity and their parents' precarious financial situation. *Id.* One of the children, who was born after Defendant and his wife moved into a homeless shelter, was adopted by Defendant's sister, Carmen Yvette Garcia, when the child was a newborn. *Id.* ¶ 43. Defendant remains in occasional contact with that child. *Id.*

Defendant also suffers from mental health issues. In 2001, Defendant was diagnosed with bipolar disorder, narcissism, and personality disorder. *Id.* ¶ 49. A letter from the Raices Center in Brooklyn, New York, dated February 25, 2016, reports current diagnoses of bipolar disorder, hypomania, and narcissistic personality disorder. *Id.* Defendant takes medication prescribed by a psychiatrist and sees a therapist weekly at the Raices Center. *Id.* According to his therapist, Defendant's diagnoses present "a serious and persistent illness which impacts his ability to make effective decisions in his life." *Id.* (quoting a report by Defendant's therapist). In addition, Defendant struggles with substance abuse and has attended numerous substance abuse programs. *Id.* ¶ 51. Four urine specimens recently collected from Defendant for drug testing returned negative for illegal substances, however, while a specimen from June 14, 2016 returned invalid due to dilution. *Id.* ¶ 52.

Defendant was diagnosed with prostate cancer in 2011. *Id.* ¶ 47. A biopsy conducted in 2012 found cancer, and Defendant underwent hormone therapy in November of 2012. *Id.* A subsequent biopsy in April of 2013 returned negative for cancer. *Id.* Defendant claims the cancer went away because he made "a promise to God." *Id.* In October of 2015, a urologist recommended another biopsy, but it is unclear whether Defendant has followed that recommendation. *Id.*

Defendant and his wife currently live in an apartment located in the same building as the offices of Brothers Car Service, Inc. ("Brothers") in Brooklyn, New York. *Id.* ¶ 45. Beginning in early April of 2011, at the behest of a co-conspirator, Defendant and Jose Nuesi ("Nuesi") conspired fraudulently to deposit stolen income tax refund checks into a business checking account for Brothers at J.P. Morgan Chase controlled by Nuesi. *Id.* ¶ 4. Nuesi was the Chief Executive Office of Brothers and is a co-defendant in this action. *Id.*

The scheme took advantage of the fact that U.S. citizens who are residents of Puerto Rico typically do not have to pay federal income taxes or file federal personal income tax returns. *Id.* ¶ 5. Further to the scheme, Defendant's co-conspirator illegally obtained identifying information for U.S. citizens who were residents of Puerto Rico and used the stolen information to file false personal income tax returns, which resulted in the issuance of fraudulent federal tax refund checks. *Id.* By unknown means, the co-conspirator arranged to have the checks directed to himself. *Id.* After he obtained the checks, the co-conspirator provided them to Defendant, who in turn passed them on to Nuesi. *Id.* Upon receiving the checks, Nuesi and others forged the signatures of the names listed on the checks and deposited them into the Brothers account at J.P. Morgan Chase, of which Nuesi was the sole signatory. *Id.* Nuesi then withdrew the funds, keeping half of the face value of the checks for himself and giving the other half to Defendant to pass on to the co-conspirator. *Id.* For his part, Defendant received a flat fee of $500.00 per check, regardless of the amount of the check. *Id.*

Between April 2011 and May 2012, Defendant, Nuesi, and their co-conspirators obtained $258,000.00 from forty checks issued to at least thirty-eight taxpayers whose identities they had stolen. *Id.* ¶ 6; Addendum to the PSR ("Addendum") ¶ 6, ECF No. 16. The primary victim of

5

Defendant's crime is the United States Treasury. PSR ¶ 6. Nevertheless, each individual taxpayer is also considered a victim of Defendant's crime. *Id.*

On August 20, 2013, Nuesi was arrested at the Brothers offices in Brooklyn, New York. *Id.* ¶ 7. On February 12, 2016, Defendant self-surrendered. *Id.*

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

Defendant and his co-conspirators stole money from the U.S. Treasury as well as the identities of unsuspecting taxpayers. The Court's sentence punishes Defendant for both harms and is crafted to deter Defendant's co-conspirators from engaging in similar criminal activity in the future.

The Court's sentence also considers the medical care needed by both Defendant and his wife. As discussed previously, Defendant suffers from numerous mental health issues, substance abuse, and cancer. PSR ¶¶ 47-52. Additionally, he is the primary caretaker for his wife, who also suffers from mental health issues. *Id.* ¶ 39. The Court's sentence considers the need for medical care and the impact of leaving Defendant's wife in the hands of home health aides if he is incarcerated.

## C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to Passing Treasury Checks Bearing Forged Endorsements, in violation of 18 U.S.C. § 510(a)(2), for which he faces a maximum term of imprisonment of ten years. *See* 18 U.S.C. § 510(a). Defendant also faces a maximum term of supervised release of three years, *id.* § 3583(b)(2); probation of not less than one nor more than five years, *id.* § 3561(c)(1); a maximum fine of $250,000.00, *id.* § 3571(b)(3); a special assessment of $100.00, *id.* § 3013; and restitution, *id.* § 3663A.

## D. The Kinds of Sentence and the Sentencing Range Established For Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

Guidelines § 2B1.1 applies to violations of 18 U.S.C. § 510(a)(2) and sets a base offense level of six. *See* United States Sentencing Commission, *Guidelines Manual*, § 2B1.1(a)(2) (Nov. 2016) ("USSG"). Defendant is accountable for a loss of $258,000.00, resulting in a twelve-level enhancement. *Id.* § 2B1.1(b)(1)(G). An additional two-level enhancement applies because Defendant's crime involved ten or more victims. *Id.* § 2B1.1(b)(2)(A). Defendant's acceptance of responsibility by pleading guilty, however, permits a three-level reduction. *Id.* § 3E1.1(a),(b). Accordingly, Defendant's total offense level is seventeen.

Defendant has a total criminal history score of zero, although this offense represents Defendant's seventh arrest and sixth conviction. PSR ¶¶ 24-32. Defendant's past crimes, all of

which occurred prior to 1996, include opening the hood of a vehicle that did not belong to him, *id.* ¶ 24; brandishing and swinging a knife while threatening to shoot a security guard, *id.* ¶ 25; violating an Order of Protection, *id.* ¶ 26; and entering the New York City subway system without paying on two occasions, *id.* ¶¶ 27-28. Additionally, on August 13, 1985, Defendant was arrested in New Jersey for possession of marijuana. *Id.* ¶ 32. The instant offense, however, is Defendant's first criminal charge in approximately twenty years.

With a total offense level of seventeen and a criminal history category of one, the Guidelines suggest an imprisonment term of between twenty-four and thirty months. USSG ch. 5, pt. A. Defendant also faces a supervised release term of one to three years, *id.* § 5D1.2(a)(2); a fine of between $5,000.00 and $50,000.00, *id.* § 5E1.2(c)(3), (h)(1); and payment of the costs of prosecution, *id.* § 5E1.5. Defendant is ineligible for probation. *Id.* § 5B1.1 cmt. n.2.

The U.S. Probation Department recommends a sentence of five years of probation with special conditions, restitution, and payment of the $100.00 special assessment. *See* Sentence Recommendation at 1. The government urges the Court to consider Defendant's "mental health difficulties and his caretaker relationship with his wife" in crafting its sentence. Government's Sentencing Mem. at 4, ECF No. 18. Defense counsel seeks a sentence of time served with a period of supervision and appropriate conditions, arguing that, given his age and health issues, Defendant does not belong in jail and that incarcerating him could have a devastating effect on his wife and lead to her placement in a facility. Defendant's Sentencing Mem. at 3, ECF No. 17.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, which requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), is not applicable in this case.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). In considering the other six § 3553(a) factors, the Court's sentence sufficiently avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Restitution is required under the Mandatory Victim Restitution Act of 1996. *Id.* § 3663A. The United States Treasury sustained losses of $258,000.00, and accordingly this amount is due in restitution. PSR ¶¶ 8, 74.

### CONCLUSION

A sentence of time served, to be followed by five years of supervised release, with the $100.00 mandatory assessment, is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and imposes the special conditions of release proposed by the Probation Department.

SO ORDERED.

s/WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: January 30, 2017
Brooklyn, New York